UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TERRIE L. SENA,<br><br>                Plaintiff(s),<br><br>      v.<br><br>OFFICER COLEMAN, et al.,<br><br>                Defendant(s). | Case No. 2:15-CV-2066 JCM (CWH)<br><br>ORDER |

Presently before the court is defendants corrections officer Nicole Coleman ("Coleman") and corrections officer Zippora Clinkscales's ("Clinkscales") (collectively "defendants") motion for summary judgment. (ECF No. 35). Plaintiff Terrie L. Sena ("plaintiff") filed a response (ECF No. 38), to which defendants replied (ECF No. 43).

**I.    Background**

Plaintiff was a pretrial detainee in protective custody at the Clark County Detention Center ("CCDC"). (ECF No. 38). Plaintiff was housed in the protective custody unit in a cell with Christine Allen ("Allen"). *Id.* Plaintiff was in protective custody due to the nature of the charges filed against her. (ECF No. 35).

On April 10, 2015 at around 6:30 p.m., Clinkscales was advised by the CCDC switchboard that plaintiff's husband called and advised them that plaintiff told him she was being threatened by her cellmate. *Id.*

Clinkscales and Officer Sua investigated the call and took plaintiff and her cellmate, Allen, out of the cell individually to interview them. *Id.* Allen told Clinkscales that plaintiff snored and as a result, Allen had told plaintiff to shut up and at times, hit the bottom of plaintiff's bunk in an effort to get plaintiff to stop snoring. *Id.* Plaintiff corroborated Allen's statements, but did not tell

**James C. Mahan**
**U.S. District Judge**

Clinkscales that Allen ever threatened her. *Id.* When asked why she had told her husband that she had been threatened, plaintiff told Clinkscales that she was nervous because of the snoring situation. *Id.*

Clinkscales advised plaintiff and Allen that when room in another cell opened up, she would move one of them. *Id.* Clinkscales did not believe Allen had made any physical threats nor that there had been any other issues between plaintiff and Allen apart from plaintiff's snoring. *Id.* Further, Clinkscales was not aware of any history of violence on the part of either inmate. *Id.*

On April 10, 2015, plaintiff alleges she was present when other inmates informed Clinkscales that plaintiff needed to be moved because Allen was planning to do something to plaintiff. (ECF No. 38). Plaintiff also alleges that she was present when another inmate informed Clinkscales of Allen's violent history. *Id.* Defendants argue these claims are entirely unsubstantiated. (ECF No. 35).

On April 11, 2015, at approximately 4:00 a.m., Clinkscales responded to screams coming from plaintiff's cell. *Id.* Clinkscales found Allen standing in front of the door and plaintiff on the cell floor holding her head. *Id.* Plaintiff told Clinkscales that Allen had pulled her hair, kicked her, and hit her for no reason. *Id.* Allen told Clinkscales that plaintiff had started the fight by hitting first. *Id.* Both plaintiff and Allen were disciplined for their participation in the fight. *Id.* Finding no marks on Allen, Clinkscales removed her from the cell and placed her in detention. *Id.* Clinkscales notified medical after observing swelling on plaintiff's face. *Id.* After being checked and cleared by medical personnel, plaintiff was returned to her cell. *Id.*

Plaintiff alleges that prior to her meeting with Clinkscales on April 10, 2015, she approached Coleman with a grievance regarding issues she was having with Allen. *Id.* Plaintiff alleges the grievance indicated Allen was verbally abusing her, causing her to lose sleep, and beginning to hit things in the room, which made plaintiff nervous. (ECF No. 38). Plaintiff alleges she handed the grievance to Coleman who read the grievance and then returned it back to plaintiff. (ECF No. 35). Coleman has no recollection of receiving or reading a grievance from plaintiff that day, but Coleman receives grievances on a daily basis. *Id.*

It was very common for her to review inmate grievances and then to respond appropriately. *Id.* Coleman receives many requests to change cells and part of her job is to evaluate whether a move is warranted. *Id.* Coleman approves such moves if the inmate has been physically abused or threatened with physical violence. *Id.*

Coleman was not aware of any issues between plaintiff and Allen, nor was she aware of any history on Allen's part of attacking other inmates. *Id.* In fact, both Coleman and Clinkscales had been on duty in the unit where plaintiff housed for the duration of plaintiff's incarceration. *Id.*

**Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that

James C. Mahan
U.S. District Judge

- 3 -

party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

**II. Discussion**

Plaintiff's 42 U.S.C. § 1983 complaint alleges her constitutional rights were violated while she was a pretrial detainee in the CCDC. (ECF No. 38). Count one (1) alleges Coleman violated plaintiff's Fourteenth and Eighth Amendment rights by intercepting and rejecting the submission of her grievance as to alleged assaults by her cellmate and her request to move cells. *Id.* Plaintiff alleges defendants were aware of her cellmate's violent tendencies and prior instances of violence with other inmates. *Id.* Further, plaintiff alleges that informing plaintiff's cellmate of plaintiff's complaint and then putting plaintiff back in her cell resulted in her attack. *Id.*

Count two (2) of plaintiff's complaint alleges Coleman violated plaintiff's First Amendment rights by intercepting and rejecting her grievance and request to change cells. *Id.*

Plaintiff alleges Clinkscales's failure to report plaintiff's safety concern to her superiors also violated plaintiff's First Amendment rights. *Id.*

Because both defendants are entitled to qualified immunity, an analysis as to whether their conduct was constitutional is not necessary.

    *i.*    *Individual liability under 42 U.S.C. § 1983*

When a plaintiff brings a claim under 42 U.S.C. § 1983, government officials sued in their individual capacities may raise the affirmative defense of qualified immunity. *See Spoklie v. Montana,* 411 F.3d 1051, 1060 (9th Cir. 2005). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Indeed, "[q]ualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

The doctrine protects government officials performing discretionary functions from liability for civil damages as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 244. Qualified immunity may apply even if the defendant makes a mistake of law or acts based upon a mistake of fact. *Id.* at 231.

Deciding whether an official is entitled to qualified immunity is a two-step inquiry. *Id.* at 232. First, the court assesses whether the plaintiff has alleged or shown a violation of a constitutional right. *Id.* Second, the court decides whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id*. The Supreme Court has instructed that district judges may use their discretion when deciding which qualified immunity prong to address first, based upon the circumstances of the case at issue. *See id.* at 236.

The second prong of the qualified immunity test requires a court to determine whether the right plaintiff claims was violated was "clearly established." *See id.* "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The dispositive question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

Further, "clearly established law" may "not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).[1] Indeed, "[w]ithout that 'fair notice,' an officer is entitled to qualified immunity." *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1777 (2015).

To be clear, "[w]here the defendant raises the affirmative defense of qualified immunity, the initial burden is upon the plaintiff to show that the rights were clearly established, after which the defendant bears the burden of proving that his conduct was reasonable." *Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho*, 42 F.3d 1278, 1285 (9th Cir. 1994) (citing *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991)); *see also Miller v. Monroe Sch. Dist.*, 159 F. Supp. 3d 1238, 1248 (W.D. Wash. 2016) (citing *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000)).

Here, defendants have asserted qualified immunity; therefore, plaintiff must demonstrate that her rights were "clearly established" within the "particularized" factual context of the encounter. *See White*, 137 S. Ct. at 552 (quoting *Anderson*, 483 U.S. at 640); *Shoshone-Bannock Tribes*, 42 F.3d at 1285.

Plaintiff argues that at the time of the incident, it was established law that deliberate indifference to an inmate's health and safety and/or failing to take reasonable steps to protect an inmate from violence by another inmate was a violation of the Eighth and Fourteenth

---

[1] The Court, in *al-Kidd*, explicitly noted that it "ha[d] repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." 563 U.S. 731, 742 (2011) (citation omitted).

1  Amendments of the U.S. Constitution. (ECF No. 38). Plaintiff argues a reasonable official
2  would have known that disregarding a protective inmate's grievance expressing concern for her
3  health and safety was a violation of the Eighth and Fourteenth Amendments. (ECF No 38).

4  Plaintiff further argues that sharing a protective custody inmate's complaint about her
5  cellmate and then placing her back in the cell with the same cellmate would likely result in
6  violence to plaintiff, thus violating her Eighth and Fourteenth Amendment rights. Plaintiff's
7  underscoring of her protective custody status is irrelevant. She was housed in a protective
8  custody unit. Both she and her cellmate were protective custody inmates.

9  Defendants argue, and the court agrees, that it was not evident to "every reasonable
10 official" that the actions of defendants violated plaintiff's Eighth and Fourteenth Amendments.
11 *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). If it is merely arguable that the defendants'
12 actions were within the law, then qualified immunity applies. *Id.*

13 Here, defendants handled the situation in a reasonable manner based on the information
14 available to them at the time. *See Pearson*, 555 U.S. at 231. Neither officer perceived there to
15 be a threat to the physical safety of plaintiff. Further, when plaintiff was given an opportunity to
16 convey the situation within her cell and the purported impending physical harm she feared at the
17 hands of Allen, she chose not to. Instead, plaintiff vaguely reiterated the dispute over the snoring
18 situation. In fact, interviewing Allen about the situation evinces concern for plaintiff's health and
19 safety. Defendants were not deliberately indifferent to plaintiff's grievance or the call from her
20 husband; they investigated to determine the appropriate response. Because defendants did not
21 perceive a risk of physical harm to plaintiff, it was reasonable for defendants to return her to her
22 cell with Allen. Further, it was not clearly established that doing so would violate plaintiff's
23 constitutional rights. *White*, 137 S. Ct. at 552.

24 Double-celling is not unconstitutional. *Rhodes v. Chapman* 452 U.S. 337, 348 (1981);
25 *Hammonds v. Martel*, 361 Fed. Appx. 813 (9th Cir. 2009). Based on what defendants knew,
26 returning plaintiff to her cell did not violate clearly established constitutional rights of which a
27 reasonable officer would have known. *White*, 137 S. Ct. at 551. While plaintiff contends other
28 inmates informed Clinkscales of Allen's purported violent propensity, the only evidence in

James C. Mahan
U.S. District Judge

- 7 -

support of this is plaintiff's hearsay statement. Even so, qualified immunity applies when the defendant makes a decision based on a mistake of fact. *Pearson*, 555 U.S. at 231.

Clinkscales stated she received requests to change cells on a daily basis. Absent clear risk of physical harm, it was impossible for to accommodate every request. Accordingly, it was entirely reasonable, based on her understanding of the situation, for Clinkscales to deny plaintiff's request. Plaintiff presents no evidence "that the defendant officers knew and understood that by leaving the inmates together they were exposing plaintiff Sena to a substantial risk of serious harm." (ECF No. 35). Nothing in plaintiff's complaint convinces the court that defendants' actions violated a clearly established law in returning plaintiff to her cell. *Pearson*, 555 U.S. at 232. Accordingly, Clinkscales and Coleman are entitled to qualified immunity.

Plaintiff has not succeeded in her initial burden of showing—with specific attention to the facts of this case—that the plaintiff's allegedly violated rights were clearly established. *See White*, 137 S. Ct. at 552; *LSO, Ltd.*, 205 F.3d at 1157.

### III. Conclusion

In sum, defendants' motion for summary judgment will be granted as to claims one and three of plaintiff's complaint—those brought pursuant to § 1983. Defendants' actions were objectively reasonable given the situation and the information available to them. Additionally, a violation of plaintiff's rights was not clearly established.

Accordingly,

IT IS HEREBY ORDERED, ADJUDED, AND DECREED that defendants' motion for summary judgment (ECF No. 35) be, and the same hereby is, GRANTED.

DATED February 2, 2018.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 8 -